UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER F., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 16-9087-SP <br><br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On December 7, 2016, plaintiff Jennifer F. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") properly considered the opinions of plaintiff's treating physician, Dr. Brian S. Grossman, and the medical expert, Dr. Anthony E. Francis, in determining plaintiff's residual functional capacity ("RFC"). Memorandum in Support of Complaint ("P. Mem. at 3-8); *see* Memorandum in Support of Defendant's Answer ("D. Mem. at 1-4).

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly discounted Dr. Grossman's opinion and properly relied on Dr. Francis's opinion, and thereby properly assessed plaintiff's RFC. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was thirty-six years old on the alleged disability onset date, and has a high school education with some college. AR at 52, 91. Plaintiff has past relevant work as an insurance clerk. *Id.* at 62.

On April 24, 2012, plaintiff filed an application for a period of disability and DIB, alleging an onset date of May 19, 2009 due to a neck injury. *Id.* at 91. The Commissioner denied plaintiff's application initially, after which she filed a request for a hearing. *Id.* at 123-27, 128-29.

Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ on April 25, 2013. *See id.* at 70-90. On August 13, 2013, the ALJ denied plaintiff's claim for benefits. *Id.* at 105-13. Plaintiff filed a timely request for review of the ALJ's decision, which was granted by the Appeals Council on August 12, 2014. *Id.* at 117-22. The Appeals Council found legal error in the ALJ's decision and remanded the case back to the ALJ. *Id.*

On May 11, 2015, plaintiff, again represented by counsel, appeared and testified at a second hearing before the ALJ. *Id.* at 38-69. The ALJ also heard testimony from Gail Maron, a vocational expert, and Anthony E. Francis, a medical expert ("ME"). *Id.* at 39-51, 61-67. On June 9, 2015, the ALJ again denied plaintiff's claim for benefits. *Id.* at 16-30.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity from her alleged onset date of May 19, 2009 through December 31, 2013, the date last insured. *Id.* at 19.

At step two, the ALJ found plaintiff suffered from the following severe impairments: cervical spine degenerative disc disease and obesity. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R., part 404, Subpart P, Appendix 1. *Id.* at 23.

The ALJ then assessed plaintiff's residual functional capacity,[1] and determined she had the RFC to perform medium work involving performance of frequent postural movements. *Id.*

The ALJ found, at step four, that plaintiff could perform her past relevant work as an insurance clerk. *Id.* at 29. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the second ALJ decision, which was denied by the Appeals Council on October 12, 2016. *Id.* at 1-7. The ALJ's

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration ("SSA") must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

# DISCUSSION

Plaintiff argues the ALJ's determination that plaintiff had the RFC to perform medium work was not supported by substantial evidence. P. Mem. at 3-8. Specifically, plaintiff contends the ALJ improperly rejected the opinion of a treating physician, Dr. Grossman, and that the opinion of a non-examining physician, Dr. Francis, did not by itself constitute substantial evidence. *Id.*

Residual functional capacity is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the

ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

A.  **Medical Evidence**

    1.  **Treating Physicians**

    **Dr. Brian S. Grossman**

Dr. Brian S. Grossman, an orthopedic surgeon, treated plaintiff from October 2009 through January 2013 in connection with her worker's compensation claim. *See* AR at 417-79. Plaintiff first presented to Dr. Grossman on October 8, 2009 for an initial orthopedic evaluation with complaints of low back and neck pain, and numbness and tingling in her right hand. *Id.* at 469-70. To that point, plaintiff remained symptomatic despite having undergone 30 physical therapy visits and using anti-inflammatory and analgesic medications. *See id.* at 474. Dr. Grossman observed plaintiff had some tenderness and decreased range of motion in her cervical and lumbar spine, but no paraspinal muscle spasm, normal motor strength, and normal gait. *Id.* at 471-73. Diagnostic testing revealed a normal EMG/NCV of plaintiff's right upper extremity and cervical paraspinal muscles, negative Phalen's sign in her right wrist, negative Tinel's sign in her right wrist and elbow, and decreased pinwheel sensation of her right second and fifth digits. *Id.* at 475-77. Based on his examinations and

plaintiff's subjective complaints, Dr. Grossman diagnosed plaintiff with a cervical strain, lumbar strain, and cervical disc protrusions between C4-C5, C5-C6, and C6-C7. *Id.* at 474. Dr. Grossman suggested a cervical epidural steroid injection may relieve plaintiff's symptoms to a tolerable level. *Id.* From a functional perspective, Dr. Grossman opined plaintiff could return to work but was precluded from: lifting greater than 10 pounds; repetitive hand activity greater than 30 minutes per hour; forceful pushing or pulling; work at or above shoulder level bilaterally; and repetitive or extreme neck motions. *Id.*

Plaintiff followed up with Dr. Grossman every one or two months until August 2010. During these visits, plaintiff often appeared uncomfortable but not in acute distress, and she was noted to have decreased cervical range of motion, tenderness in her bilateral trapezii and medial scapular borders, and intact motor function and sensation in her upper extremities. *See generally id.* at 441-67. While plaintiff initially responded favorably to the cervical steroid injections, symptoms relating to severe neck pain, arm pain, and numbness recurred such that there was "no noticeable improvement." *Id.* at 445; *see id.* at 463-64. Additional injections were given. *See id.* at 456, 459. Dr. Grossman also recommended an independent exercise program, use of Ibuprofen or Norco pain medications, and Skelaxin for muscle spasms treatment. *Id.* at 445, 449, 454, 457, 460, 466. Plaintiff's use of narcotics medications and muscle relaxants, and her escalating desire for such medications, was later deemed "not ideal" by Dr. Grossman. *Id.* at 442. Based on plaintiff's continued level of pain, Dr. Grossman discussed in June 2010 a recommended surgical treatment, described as "the last resort to resolve [plaintiff's] neck pain," to proceed with anterior cervical discectomy and fusion of the three impacted cervical discs. *Id.* at 445; *see id.* at 453-54. Plaintiff stated "that she would like to proceed with surgery." *Id.* at 453. In August 2010, Dr. Grossman recommended plaintiff's care be overseen by a pain management

specialist due to her prescription medications. *Id.* at 442.

Plaintiff failed to appear at her follow up appointment with Dr. Grossman, and she did not undergo the recommended surgery, despite it being authorized. *Id.* at 434. Plaintiff presented again to Dr. Grossman eighteen months later on February 29, 2012, with a chief complaint of cervical spine pain, constant neck pain, arm pain, but no numbness in the hands. *See id.* at 433-39. Dr. Grossman observed plaintiff had tenderness in her bilateral trapezii, decreased range of motion in her cervical spine, but intact motor strength and sensation. *Id.* at 437. Dr. Grossman noted plaintiff became addicted to narcotic medications between her visits with him. *Id.* at 438. Dr. Grossman again believed plaintiff was a candidate for neck surgery, but he first requested authorization to obtain an MRI of plaintiff's cervical spine, a transfer of plaintiff's care to a pain management specialist to oversee her pain medication intake, and a psychologist or psychiatrist to perform a preoperative psychological assessment to determine plaintiff's fitness to undergo surgery. *Id.* at 438-39. As to her functional work capacity, Dr. Grossman opined plaintiff could return to work but was precluded from strong gripping bilaterally, lifting or carrying greater than 5 pounds bilaterally, forceful pushing or pulling, work at or above shoulder level bilaterally, and repetitive or extreme neck motions. *Id.* at 439. Dr. Grossman repeated these restrictions in June 2012.[2] *See id.* at 627.

In January 2013, plaintiff returned to Dr. Grossman, complaining her neck pain "worsened significantly" during the preceding months. *Id.* at 486. Dr. Grossman noted plaintiff still had bilateral tenderness of her trapezii, along with neck pain, decreased range of motion in her cervical spine, and decreased light

---

[2] Plaintiff's June 20, 2012 visit with the Southern California Orthopedic Institute lacks the physician's signature page. *See* AR at 626-27. The court infers from the treatment notes that Dr. Grossman treated plaintiff during this visit.

8

touch sensation in the right dorsal forearm and hand. *Id.* at 487. Dr. Grossman diagnosed plaintiff with cervical spondylolsis between C4-C7, moderate right foraminal stenosis C5-C6 and moderate central stenosis C6-C7, instability C4-C5, and probable anxiety and depression. *Id.* at 488. Dr. Grossman further opined plaintiff "does not appear capable of performing any productive employment . . . based upon her current level of symptoms and lack of favorable response to treatment while under my care." *Id.* at 489. While Dr. Grossman again mentioned plaintiff was a candidate for surgery, he noted plaintiff was extremely fearful and did not want to pursue surgery at that time, and she needed to undergo a psychological evaluation to ensure she did not elicit a psychological contraindication to undergo surgery. *Id.* at 488-89.

**Dr. Alan Gross**

Dr. Alan Gross, also an orthopedic surgeon, initially saw plaintiff on October 26, 2010 for the purpose of an orthopedic consultation, and diagnosed her with cervical radiculopathy. *See id.* at 518. Dr. Gross then treated plaintiff regularly until November 2011. *See generally id.* at 491-541. During subsequent visits, Dr. Gross also diagnosed plaintiff with cervical spine protrusion. *Id.* at 533, 535, 537. Over the course of plaintiff's visits, Dr. Gross reviewed a cervical spine MRI scan, which revealed disc protrusions, herniated disc, and degenerative disc changes, while a EMG/nerve conduction study was normal as to plaintiff's bilateral upper extremities. *Id.* at 540. Based on the study, Dr. Gross observed no true clinical evidence of radiculopathy, and diagnosed plaintiff with cervical degenerative disc disease, with asymmetric range of motion. *Id.* at 520.

From a functional perspective, Dr. Gross opined plaintiff had the following work restrictions: no repetitive flexion/extension of the neck; no repetitive work at or above shoulder level; and no repetitive pushing and pulling. *Id.* at 521. Dr. Gross further opined plaintiff was in need of additional doctor visits, occupational

9

or physical therapy, repeat MRI scans and EMG/nerve conduction studies, medications, and neck fusion surgery. *Id.* at 527. By the end of his visits with plaintiff, and after a referral consultation with spine surgeon Dr. J. Patrick Johnson, Dr. Gross determined plaintiff needed neck fusion surgery and recommended no further medication prescriptions. *Id.* at 491; *see also id.* at 500 (stating plaintiff "is in need of surgery").

**Moorpark Medical Family Medical Clinic**

Dr. Khristina M. Mueller, Dr. Maura A. Woznica, and Dr. Erik M. Bezema treated plaintiff at Moorpark Medical Family Medical Clinic from February 2013 through December 2014 in connection with complaints relating to her gallbladder, headaches, cough, hypertension, anxiety, and medications. *See id.* at 644-87. Physical examinations of plaintiff's neck revealed no thyromegaly and no cervical lymphadenopathy. *Id.* at 646, 650, 653, 666, 669, 672, 677. Dr. Mueller found plaintiff was in no acute distress during her visits. *See id.* at 669. Dr. Mueller documented plaintiff had a history of opioid dependance. *Id.* Dr. Mueller also noted plaintiff wanted to wait until her son turned 18 years old before she proceeded with neck surgery. *Id.* at 677.

### 2. Examining Physicians

Dr. Chester Hasday, an orthopedic surgeon, reviewed plaintiff's medical records and examined her on two occasions, on April 22, 2011 and April 27, 2011. *Id.* at 574-608. Dr. Hasday observed plaintiff had complete resolution of her bilateral shoulder and lumbar spine injuries, and there were no complaints regarding her shoulders or lower back. *Id.* at 606. Dr. Hasday noted plaintiff primarily had axial neck pain with non-specific radicular symptomatology involving her upper extremities, kyphotic deformity of her cervical spine, mild instability at the C5-C6 level, and mild progression of her disc disease. *Id.* A Lumbard test to evaluate plaintiff's loss of strength failed to reveal objective

evidence since Dr. Hasday observed plaintiff did not make a full effort. *Id.* at 570, 583. A computerized hand grip test detected no ratable grip strength loss of either of plaintiff's hands. *Id.* at 567-68, 583. Dr. Hasday reviewed the examination findings of Dr. J. Patrick Johnson, who opined plaintiff had degenerative disc disease that resulted in considerable neck pain, and recommended the option of anterior cervical discectomy and fusion surgery. Dr. Hasday opined plaintiff was a candidate for a 2-level anterior cervical discectomy and fusion or cervical disc arthroplasty, since non-operative treatment had failed. *Id.* at 607. Dr. Hasday later issued supplemental medical reports upon review of additional medical records. He observed a EMG/nerve conduction study was within normal limits. *Id.* at 556-57. Dr. Hasday opined plaintiff was at maximum medical improvement after she declined surgery in August 2012. *Id.* at 542, 547.

Dr. Juliane C. Tran examined plaintiff on April 5, 2011. *Id.* at 610-19. After a physical examination, Dr. Tran found plaintiff's sensation, strength, and reflexes were normal in both upper extremities, a Tinel's test was negative in both wrists and elbows, and a Phalen's test was negative bilaterally. *Id.* at 610. A nerve conduction study and EMG of plaintiff's bilateral upper extremities were both also normal. *Id.* at 611. Dr. Tran opined there was no electrodiagnostic evidence of right or left cervical radiculopathy, carpal tunnel syndrome, cubital tunnel syndrome, radial tunnel syndrome, or peripheral neuropathy. *Id.*

### 3. <u>Non-Examining Physicians</u>

On August 2, 2012, Dr. Maria M. Legarda reviewed plaintiff's medical records and opined plaintiff had the RFC to: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand, walk, or sit with normal breaks for about six hours in an eight-hour day; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop, crouch, or crawl; frequently kneel; and occasionally reach overhead bilaterally due to neck

pain and dysfunction. *Id.* at 95-97. Dr. Legarda rejected Dr. Grossman's more restrictive limitations because they were "without substantial support from other evidence of record." *Id.* at 98.

Dr. Anthony E. Francis, an orthopedic surgeon, reviewed plaintiff's medical records and testified as a medical expert at the hearing before the ALJ on May 11, 2015. *Id.* at 39-51. Dr. Francis opined a medium RFC was appropriate for plaintiff, with the ability to: lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk six out of eight hours; sit six out of eight hours with normal breaks; frequently use stairs and ramps; frequently use ladders and scaffolds; frequently stop, bend, crawl, kneel, squat, and balance; have no limitations on her upper extremities; frequently use her lower extremities including foot controls within the weight limitations of 50 and 25 pounds; and have no environmental limitations. *Id.* at 43-44. Dr. Francis allowed that based on plaintiff's complaints of pain, her RFC could be reduced to a light RFC, thereby limiting her to lifting and carrying 20 pounds occasionally and 10 pounds frequently. *Id.* at 44. Further, Dr. Francis opined he would not adopt limitations relating to head positioning. *Id.* Dr. Francis did not differ with Dr. Grossman's diagnoses about plaintiff's cervical condition, but he declined to adopt Dr. Grossman's June 2012 or January 2013 opinions as to plaintiff's limitations because those opinions were issued in a worker's compensation case that utilized different language and terminology than a disability benefits claim. *Id.* at 45-46, 48-51.

**B.** **The ALJ Gave Specific and Legitimate Reasons for Rejecting Dr. Grossman's Opined Limitations**

The ALJ determined plaintiff had the RFC to perform medium work, which includes: frequently lifting up to 50 pounds or carrying objects up to 25 pounds; standing or walking for approximately 6 hours in an 8-hour workday; using the

arms to grasp, hold, and turn objects; and frequently bending or stooping. *Id.* at 23, n.1 (citing Social Security Ruling 83-10). In reaching that determination, the ALJ acknowledged Dr. Grossman's opinions but did not find them to be persuasive or controlling for two chief reasons: (1) they were unsupported by the objective medical evidence in the record; and (2) they were based on plaintiff's subjective complaints, which Dr. Grossman took at face value without accounting for factors that undermined the credibility of those complaints. *Id.* at 26-28.

First, the ALJ concluded "the medical findings submitted by [Dr. Grossman] and otherwise documented in the record do not support a finding that the claimant's medical condition is of disabling severity, nor does [Dr. Grossman] provide an assessment of the claimant's residual functional capacity which is compatible with the record as a whole." *Id.* at 26; *see Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (the lack of supporting medical findings is a specific and legitimate reason to discount an opinion). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (internal quotation marks and citation omitted). "'The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citation omitted).

Here, the ALJ recounted the evidence in detail, including the objective testing results that conflicted with Dr. Grossman's opinions. AR at 19-20, 24-26. As described above, Dr. Grossman consistently opined that plaintiff had restrictions in the use of her upper extremities and neck. But as the ALJ noted, diagnostic testing showed plaintiff did not have problems affecting the use of her upper extremities. AR at 19, 475-77. EMG/nerve conduction studies similarly revealed normal findings in plaintiff's upper extremities. *Id.* at 20, 26, 540, 556-

57, 611. Plaintiff also had normal muscle strength and reflexes in her bilateral upper extremities, and these complaints had resolved. *Id.* at 606, 610. Further, Dr. Hasday was unable to assess plaintiff's loss of strength in her upper extremities because she failed to make complete effort. *Id.* at 567-68, 570. There is thus substantial evidence in the medical record to support the ALJ's rejection of Dr. Grossman's opined restrictions with respect to plaintiff's upper extremities as unsupported by the objective medical evidence. This was a specific and legitimate reason for doing so.

Second, the ALJ found Dr. Grossman's opinions regarding plaintiff's work abilities appeared to be based on his taking plaintiff's "subjective allegations at face value," with Dr. Grossman "merely reiterat[ing] those allegation in his reports and when making his assertions regarding the claimant's ability to work," without taking other factors affecting the credibility of those allegations into account. *Id.* at 27-28. Indeed, the ALJ found plaintiff's subjective complaints to be "not entirely credible," and plaintiff does not challenge that finding. *See id.* at 25.

Plaintiff argues the ALJ erred by rejecting Dr. Grossman's opinions based on her credibility because Dr. Grossman himself did not appear to discount plaintiff's complaints. Plaintiff cites *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008), for the proposition that an ALJ does not provide a legitimate reason to reject the opinion of a treating physician "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Id.* at 1199-1200 (citation omitted). But here, although Dr. Grossman also examined plaintiff, as discussed above the objective medical evidence supports Dr. Grossman's diagnoses but not the severity of the limitations opined. In such circumstances, that the physician's opinion is based on the claimant's discredited allegations regarding her symptoms is a specific and legitimate reason for rejecting the

14

opinion. *See Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (affirming ALJ's rejection of a treating physician's opinion when it was based on the claimant's self-reported limitations); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject a treating physician's opinion if it is based "to a large extent" on self-reporting that has been properly discredited).

The degree to which Dr. Grossman relied on plaintiff's subjective complaints may be seen from plaintiff's treatment and examination history with Dr. Grossman recounted above. Testing and observations consistently resulted in largely normal findings apart from some tenderness and decreased range of motion. Yet after previously finding plaintiff could return to work with certain limitations, Dr. Grossman ultimately opined plaintiff was incapable of any work "based on her current level of symptoms and lack of favorable response to treatment while under my care." AR at 489. As to plaintiff's lack of favorable response to treatment, the ALJ particularly noted that plaintiff was recommended for neck surgery by multiple physicians including Dr. Grossman but repeatedly declined the surgery, and "has provided no credible basis, apart from a general anxiety, for not undergoing the procedure." *Id*. at 26.

Accordingly, both the lack of supporting medical evidence and reliance on plaintiff's discredited subjective complaints were specific and legitimate reasons for rejecting Dr. Grossman's opinion. As such, the ALJ did not err in rejecting the opinion.

**C.     The ALJ's RFC Determination Was Supported by Substantial Evidence Including Dr. Francis's Opinion**

While rejecting the limitations opined by Dr. Grossman, the ALJ accepted the conclusions of the medical expert, Dr. Francis, in determining plaintiff's RFC, because she deemed Dr. Francis's diagnosis and opinions were well supported by the objective medical record, the degree of treatment, and other credibility factors.

*Id.* at 28. Plaintiff argues the ALJ erred in relying on the ME's opinion in determining plaintiff's RFC.

The "opinions of non-treating or non-examining physicians may [] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). But if the non-examining physician relies on the same clinical findings as an examining or treating physician and simply reaches a different conclusion, the opinion of the non-examining physician cannot constitute substantial evidence. Indeed, the same is true even for an examining physician who relies on the same clinical findings as a treating physician but differs in his or her conclusions. *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1983)). Plaintiff argues that is the case with Dr. Francis's opinion here.

Dr. Francis reviewed Dr. Grossman's treatment records and findings, and agreed with Dr. Grossman's diagnosis, but reached a different RFC determination. *See* AR at 43-44, 51. Were Dr. Grossman's the only records reviewed, plaintiff would be correct that Dr. Francis's opinion could not constitute substantial evidence. But Dr. Francis reviewed all the evidence in the record, apart from a list of medications supplied by plaintiff's counsel after the ALJ rendered her decision. *See id.* at 40, 51. Thus, Dr. Francis did not base his opinion on the same clinical findings and evidence as Dr. Grossman, but also considered all the other medical evidence discussed above. The ALJ found Dr. Francis's opinion to be well supported by the medical evidence in the record. *Id.* at 28. As such, the ALJ properly relied on Dr. Francis's opinion as substantial evidence to support her RFC determination.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 21, 2019

_____
SHERI PYM
United States Magistrate Judge